JOSEPH WASHINGTON *v.* SCHEUSTER CHRISTIE
(AC 18447)

Lavery, Landau and Dupont, Js.[1]

---

[1] The listing of judges reflects their seniority status on this court as of the date of oral argument.

Argued December 10, 1999—officially released June 6, 2000

*Kathryn A. Calibey,* with whom was *David W. Cooney,* for the appellant (plaintiff).

*Andrew J. O'Keefe,* with whom was *Kathryn M. Cunningham,* for the appellee (defendant).

*Opinion*

LANDAU, J. This is an appeal by the plaintiff, Joseph Washington, from the judgment of the trial court, rendered after a jury verdict for the defendant physician, Scheuster Christie. On appeal, the plaintiff raises two evidentiary challenges, maintaining that the court improperly (1) redacted from medical reports admitted into evidence pursuant to General Statutes § 52-174 (b) the diagnosis and opinions as to causation of the plaintiff's treating physicians and (2) precluded the plaintiff's expert witness from rendering an opinion regarding the defendant's alleged deviation from the applicable standard of care. Additionally, the defendant presents for consideration an alternate ground for affirming the judgment, i.e., that the plaintiff failed to present any

evidence identifying the specific act of negligence that allegedly caused the plaintiff's injury. We reverse the trial court's judgment on the basis of the plaintiff's second claim.[2]

The following facts and procedural history are relevant to this appeal. This medical malpractice case arose out of a surgical procedure the defendant performed on the plaintiff to excise a cervical lymph node for biopsy.[3] The plaintiff saw his primary care physician in November, 1991, because he had a lump growing on his neck and was referred to the defendant. On the initial visit, the defendant performed a fine-needle aspiration, which was negative for malignancy but indefinite as to the character of the lump. Upon being presented with several options to assess whether there was cancer in the cervical node, the plaintiff selected biopsy surgery, which was performed in December, 1991. A three centimeter mass, consisting of a lymph node measuring approximately one-half centimeter and surrounding connective tissue, was removed and sent to pathology for examination. Subsequent to the surgery, the plaintiff began to experience pain and a weakness in the area of his right shoulder, and was diagnosed as suffering from a severe but incomplete right accessory nerve injury.

At trial, the plaintiff offered the testimony of David A. Zwillenberg, a physician and associate professor of otolaryngology and head and neck surgery at Thomas Jefferson Hospital in Philadelphia. The plaintiff sought to have Zwillenberg testify that the defendant deviated from the standard of care in performing the surgery on the plaintiff and that this deviation caused the injury

---

[2] Because we conclude that the court improperly restricted the testimony of the plaintiff's expert witness, we will not address the merits of the plaintiff's first claim.

[3] There is disagreement, which we will discuss, about whether the procedure was to excise a mass or a node.

to the nerve. Zwillenberg's intention was to testify that the manner in which the dissection was performed during surgery deviated from the accepted standard of care in that the nerve was injured because the defendant was out of the surgical field in which he should have been operating. This opinion was based on several factors, including an excess amount of nonpathological tissue that was excised, as revealed by the pathology report, the timing or duration of the procedure and the presence of paralysis or difficulty in the plaintiff's shoulder after surgery.[4] The court refused to admit any testimony concerning the foundational information provided in the pathology report and precluded Zwillenberg from testifying that the defendant negligently removed too much tissue during the biopsy surgery, which indicated that the defendant was outside the surgical field. The jury returned a verdict in favor of the defendant, and the plaintiff filed a motion to set aside the verdict, which the court denied. This appeal followed.

The plaintiff's second claim, which is dispositive of the appeal, is that the court improperly precluded Zwillenberg from rendering an expert opinion regarding the defendant's alleged deviation from the applicable standard of care. We agree.

"Generally, evidence is admissible to prove a material fact that is relevant to the cause of action alleged by the plaintiff." (Internal quotation marks omitted.) *Hayes* v. *Manchester Memorial Hospital*, 38 Conn. App. 471, 474, 661 A.2d 123, cert. denied, 235 Conn. 922, 666 A.2d 1185 (1995). "It is a well established principle of law that the trial court may exercise its discretion with regard to evidentiary rulings, and the trial court's rulings will

---

[4] Zwillenberg's expert opinions were based on his training, experience and review of the plaintiff's medical records. He has been a practicing physician for sixteen years and is board certified in otolaryngology. At the time of trial, he was chairman of Thomas Jefferson Hospital's department quality assurance committee and the pathology review committee.

not be disturbed on appellate review absent abuse of that discretion. . . . Sound discretion, by definition, means a discretion that is not exercised arbitrarily or wilfully, but with regard to what is right and equitable under the circumstances and the law . . . . And [it] requires a knowledge and understanding of the material circumstances surrounding the matter . . . . In our review of these discretionary determinations, we make every reasonable presumption in favor of upholding the trial court's ruling." (Citations omitted; internal quotation marks omitted.) *New London Federal Savings Bank* v. *Tucciarone*, 48 Conn. App. 89, 92, 709 A.2d 14 (1998).

"[Our Supreme Court has] often stated that before a party is entitled to a new trial because of an erroneous evidentiary ruling, he or she has the burden of demonstrating that the error was harmful. . . . When determining that issue in a civil case, the standard to be used is whether the erroneous ruling would likely affect the result. . . . *Poulos* v. *Pfizer, Inc.*, 244 Conn. 598, 614, 711 A.2d 688 (1998)." (Internal quotation marks omitted.) *Federal Deposit Ins. Corp.* v. *Carabetta*, 55 Conn. App. 369, 372, 739 A.2d 301, cert. denied, 251 Conn. 927, 742 A.2d 362 (1999).

The court's exclusion of Zwillenberg's testimony was based on a conflict between the parties' characterization of the procedure that was performed. While Zwillenberg referred to the procedure as removal of a node, the defendant argued that the procedure should be termed removal of a mass. The difference, according to the defendant, was that the removal of a three centimeter mass from the plaintiff's shoulder was consistent with the specifications of the operation. The defendant, with the informed consent of the plaintiff, undertook to remove a three centimeter mass, and such a mass was removed. Zwillenberg insisted that it did not matter whether the procedure was termed removal of a mass

or removal of a node; it was the same procedure and because the lymph node was less than one-fifth the size of the entire mass, the defendant had negligently removed more tissue than was required. The court, however, agreed with the defendant and ruled that Zwillenberg could not testify that the defendant had removed too much tissue.

The court's conclusion that the operation for the removal of a mass was different from one for the removal of a node should have been left to the jury. There was evidence to support Zwillenberg's assertion that there was no difference between the two. Office notes from two separate examinations of the plaintiff indicate that the defendant believed the plaintiff was suffering from cervical adenopathy, or an enlarged lymph node in the posterior triangle of the neck. The defendant also testified that an excision of a mass and excision of a node procedure could be the same thing. Under these circumstances, the plaintiff should have been allowed to present Zwillenberg's testimony to the jury.[5]

The court abused its discretion by restricting the testimony of Zwillenberg. The plaintiff alleged in his complaint that the defendant was negligent "in that he failed to utilize appropriate dissection procedures in the vicinity of the spinal accessory nerve . . . ." Zwillenberg's testimony was relevant to the allegation that the defendant was negligent. The size of the mass that was removed from the plaintiff's shoulder was one of

---

[5] Zwillenberg testified outside the presence of the jury that "neck biopsies are not, in themselves, curative procedures. They are diagnostic procedures. The idea is to establish whether the patient has a cancer or a lymphoma or some other problem. You don't go in there and take out lumps just because they're there. . . . You don't remove the whole contents of the posterior triangle or every mass that's sitting there. This increases the likelihood of damaging the spinal accessory nerve and is not a necessary procedure."

the foundations on which Zwillenberg based his ultimate conclusion that the defendant deviated from the appropriate standard of care. Because the plaintiff's expert could not testify about the reason for his conclusion that the defendant was negligent, the court's ruling was harmful to the plaintiff's case. See *Hayes* v. *Manchester Memorial Hospital*, supra, 38 Conn. App. 475–76 (holding that trial court's ruling was harmful error where "[t]he evidence excluded [went] to the principal issue to be resolved by the jury, whether the duty of the defendants to conform to the applicable standard of care was breached").[6]

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.

---

[6] The defendant claims as an alternate ground for affirming the judgment that the plaintiff failed to present any evidence identifying the specific act of negligence that caused the plaintiff's injury and, therefore, the judgment should be affirmed. Because the plaintiff's expert improperly was precluded from giving testimony about the defendant's alleged negligence, we cannot agree with the defendant's claim.